Citation Nr: 1132147 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 05-36 889 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006 to May 31, 2009.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Timothy D. Rudy, Counsel



INTRODUCTION

The Veteran served on active duty from January 1966 to May 1966, with subsequent service in the Air National Guard of Idaho.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2005 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia, which granted service connection for hearing loss and awarded a 10 percent disability rating, effective October 25, 2004. In his Notice of Disagreement, the Veteran contended that he was entitled to a higher rating.

In June 2008, the Veteran testified during a Board hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing is of record.

When this case was previously before the Board in September 2008, it was remanded for a VA examination to determine the Veteran's current hearing loss. As a result of that examination, the RO proposed and eventually implemented a reduction of his disability rating to noncompensable, effective June 1, 2009. 

In September 2009, the Board remanded this matter for further development, to include obtaining private medical evidence, if the Veteran provided his authorization.

In May 2010, the Board denied an initial rating in excess of 10 percent for bilateral hearing loss, for the period from October 25, 2004 to December 14, 2006. In addition, it remanded for additional development the remaining two issues on appeal: entitlement to a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006 to May 31, 2009; and whether the reduction of the Veteran's disability rating for bilateral hearing loss, from 10 percent to zero percent, effective June 1, 2009, was proper.


On remand, the RO/AMC restored the reduction of the Veteran's disability rating to that of 10 percent, effective June 1, 2009. Therefore, the sole issue remaining before the Board is his entitlement to a rating in excess of 10 percent for the period from December 15, 2006 to May 31, 2009.


FINDING OF FACT

From December 15, 2006 to May 31, 2009, the result of a VA audiometric test shows the Veteran had level II hearing in his left ear and level II hearing in his right ear.


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006 to May 31, 2009, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

The provisions of the Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) and as interpreted by the United States Court of Appeals for Veterans Claims (the Court), have been fulfilled by information provided to the Veteran in letters from the RO dated in November 2004, May 2008, May 2009, May 2010, June 2010, August 2010 and November 2010. The November 2004 letter notified the Veteran of VA's responsibilities in obtaining information to assist the Veteran in completing his original service connection claim, and identified the Veteran's duties in obtaining information and evidence to substantiate his claim. (See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004). See also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), reversed on other grounds, 444 F.3d 1328 (Fed. Cir. 2006), Dingess/Hartman v. Nicholson, 20 Vet. App. 473 (2006); Mayfield v. Nicholson (Mayfield II), 20 Vet. App. 537 (2006); Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009)).

Thereafter, the Veteran was granted service connection for bilateral hearing loss and assigned an initial disability rating and effective date. As his claim was more than substantiated in that it was proven, the purpose that the notice is intended to serve has been fulfilled and no additional notice is required. Dingess, 19 Vet. App. at 490-91. 

During the pendency of this appeal, the Court in Dingess/Hartman found that the VCAA notice requirements applied to all elements of a claim. An additional notice as to disability ratings was provided in the correspondence dated in May 2008 and May 2009, but an additional notice as to effective dates was not provided to the Veteran. However, this deficiency is not shown to prejudice the Veteran. Because in the decision herein, the Board denies a higher rating for hearing loss for the period from December 15, 2006 to May 31, 2009, no new effective date is being, or is to be, assigned. Therefore, there is no possibility of prejudice to the Veteran under the notice requirements of Dingess/Hartman. 

In addition, since this higher rating claim for bilateral hearing loss is a "downstream" issue from that of service connection, notice about increased rating claims pursuant to the original Court decision in Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), was never required for this issue. See VAOPGCPREC 8- 2003 (Dec. 22, 2003).

In any event, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notices. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination). In view of the above, the Board finds that the notice requirements pertinent to the issue decided on appeal have been met.

The duty to assist also has been fulfilled. Private and VA medical records relevant to this matter have been requested or obtained, with the exception of additional private medical records from Pollard Professional Hearing Services. As a result of the Board's September 2009 remand, the RO/AMC provided the Veteran an opportunity to authorize the release of these records, but he declined to do so and instead reported that he had no other information or evidence to provide VA. In addition, the Veteran has been provided with VA examinations in November 2008 and July 2010. 

In its May 2010 remand the Board had requested that the RO/AMC should request specific details of the Veteran's December 2006 audiological test results from the Augusta, Georgia VAMC, to include interpreted and uninterpreted pure tone audiometry graphs/charts and the results of controlled speech discrimination testing that were undertaken during this consultation. The Board's review of the claims file discloses that the RO/AMC, on two occasions, sent the VAMC correspondence requesting this material. There is no reply in the claims file, except that several copies of the original December 15, 2006 entry have been submitted. The Board notes that it has attempted to seek clarification of the December 2006 VA clinic results. The Board finds that further attempts to obtain this record would be futile. In any case, considering the fact that there are later VA examinations in November 2008 and July 2010, which are subsequent to the VA clinical test in December 2006, the Board sees no need for an additional remand to retrieve test results from the VAMC as it is unlikely the older examination would show worse hearing in this case. Thus, the Board finds that the available medical evidence is sufficient for an adequate determination. There has been substantial compliance with all pertinent VA laws and regulations and to move forward with the claim being decided would not cause any prejudice to the Veteran.




Increased Rating - Laws and Regulations

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2010).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). The Court has held that a claim for a higher rating when placed in appellate status by disagreement with the original or initial rating award (service connection having been allowed, but not yet ultimately resolved), remains an "original claim" and is not a new claim for an increased rating. See Fenderson v. West, 12 Vet. App. 119 (1999). In such cases, separate compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the pendency of the appeal, a practice known as "staged" ratings. Id. at 126. As noted in the Introduction above, in its previous remand the Board requested the complete results of a December 15, 2006 VA hearing evaluation, which could lead to a staged rating for bilateral hearing loss in this case. Id.

It is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2010). Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). Evaluation of disabilities based upon manifestations not resulting from service-connected disease or injury and the pyramiding of ratings for the same disability under various diagnoses are prohibited. 38 C.F.R. § 4.14 (2010).



As a general matter, lay statements are considered to be competent evidence when describing the features or symptoms of an injury or illness. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995). As a layperson the Veteran is only competent to report observable symptoms--not clinical findings which are applied to VA's Schedule for Rating Disabilities. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Bruce v. West, 11 Vet. App. 405, 410-11 (1998).

When there is a question as to which of two evaluations to apply, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating, otherwise the lower rating shall be assigned. 38 C.F.R. § 4.7 (2010).

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant; however, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3 (2010).

Hearing Loss From December 15, 2006 to May 31, 2009

The Veteran seeks a higher rating for his service-connected bilateral hearing loss on the basis that the 10 percent rating assigned does not adequately reflect the severity thereof. Historically, the Veteran was granted service connection for bilateral hearing loss in a May 2005 rating decision and awarded a 10 percent disability rating, effective October 25, 2004. In his August 2005 Notice of Disagreement, the Veteran contended that his hearing loss was worse than the assigned rating. 

Subsequently, the RO proposed and eventually implemented a reduction of his disability rating from 10 percent to noncompensable, effective June 1, 2009. In its May 2010 decision, the Board denied a higher initial rating in excess of 10 percent for bilateral hearing loss, for the period from October 25, 2004 to December 14, 2006. In addition, it remanded for further development entitlement to a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006 to May 31, 2009 as the Board requested the complete results of a December 15, 2006 VA hearing evaluation, which could lead to a staged rating for bilateral hearing loss.

In May 2010 the Board also remanded the issue of whether the reduction of the Veteran's disability rating for bilateral hearing loss, from 10 percent to zero percent, effective June 1, 2009, was proper. As noted above, a subsequent rating decision in June 2011 restored the Veteran's disability rating to 10 percent, effective June 1, 2009. Therefore, the Veteran has a 10 percent disability rating for his hearing loss since the effective date of October 25, 2004. However, this appeal is limited to whether a higher or staged disability rating is warranted for the time period between December 15, 2006 and May 31, 2009 as this issue has yet to be adjudicated by the Board.

The Veteran's service-connected bilateral hearing loss currently is rated pursuant to 38 C.F.R. §§ 4.85 and 4.86, Diagnostic Code 6100 (2010). Pursuant to these regulations, hearing acuity is measured by the results of speech discrimination tests and pure tone audiometry tests in the frequencies of 1000, 2000, 3000 and 4000 cycles per second (Hertz). 38 C.F.R. § 4.85(a). Examinations are conducted without the use of hearing aids. Id. The rating schedule establishes eleven auditory acuity levels to evaluate the degree of disability for service-connected hearing loss based on the examination results, ranging from level I for essentially normal acuity through level XI for profound deafness. 38 C.F.R. §§ 4.85(b) and 4.85(c). Disability percentage ratings for hearing impairment are derived by a mechanical application of the rating schedule to the auditory acuity level assigned to each ear. See Bruce v. West, 11 Vet. App. 405, 409 (1998).

In addition, 38 C.F.R. § 4.86 specifies two exceptional patterns of hearing impairment. The first exceptional pattern exists when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more. 38 C.F.R. § 4.86(a). In this circumstance, the rating specialist must determine the auditory acuity level for each ear from either Table VI or Table VIa, whichever results in the higher level. Id. The second exceptional pattern exists when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86(b). Here also, the auditory acuity level for each ear will be selected from either Table VI or Table VIa, whichever results in the higher level. Id. However, in this instance that level then will be elevated to the next higher level. Id.

On December 15, 2006, the Veteran was seen for a VA audiology consultation. It was noted that he wore bilateral hearing aids that he had purchased about five to six years before. According to the Veteran the left aid did not work and the right aid gave little help. The Veteran reported that he wore earmuffs when he hunted and that he wanted custom earplugs. An audiogram is not included in the claims file. According to the treatment note, puretone air conduction results and the speech audiometric results could be viewed on the computer system. It also appears that the speech recognition scores (76 percent for the left ear and 56 percent for the right ear) were obtained using a recorded word list and not the Maryland CNC test. The VA audiologist also recorded that test results indicated normal hearing from 250 to 1000 Hz sharply dropping to severe sensorineural hearing loss in the right ear and moderately severe to severe sensorineural hearing loss in the left ear from 1500 to 8000 Hz. She also noted that a listening check of both hearing aids found the right aid was weak and the left aid was dead.

As noted above, the Board had remanded for the actual audiogram results from the Veteran's December 15, 2006 VA audiology consultation, but the RO/AMC was unsuccessful in obtaining this information from the VAMC or its computer system, and further attempts to collect this information would be futile. Instead, the December 15, 2006 VA treatment note appears no less than four times in the Veteran's claims file, but all without the audiogram information attached which the computer reference noted on each record was available. 

Numerous lay statements submitted to the claims file are from witnesses attesting that the Veteran's hearing had grown worse over the years.

During his Board hearing in June 2008, the Veteran testified that his hearing loss affected his employment. He said that he was a self-employed refrigeration technician and his difficulty communicating with customers had worsened over time. He said that he had lost work as a result of the deterioration of his hearing. He also testified that he had been wearing hearing aids for at least 15 years, but that his hearing had gotten progressively worse in the last two or three years. Under questioning, he said that he would like to be rated at 50 percent to account for income he had lost due to his hearing. The Veteran stated that in the last 10 or 12 years his income had dropped by more than 50 percent. He said that he earned approximately $30,000 ten years ago, but now made approximately $12,000. The Veteran also testified that the hearing difficulty which hurt him the most was not being able to communicate effectively with his grandchildren (see hearing transcript at pp. 5-10).

The Veteran underwent a VA audiological examination in November 2008. He told the examiner that he wore hearing aids which he purchased in approximately 1995. While VA subsequently issued some hearing aids, the Veteran did not like them. He also complained that his hearing had worsened over time and that he used to hunt 20 years ago. He said that since leaving service he had worked on commercial refrigeration equipment with hearing protection. Audiogram findings, in pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
AVG
RIGHT
35
70
70
80
64
LEFT
25
65
70
70
58

Pure tone threshold levels averaged 58 decibels for the left ear and 64 decibels for the right ear. The speech recognition score on the Maryland CNC word list was 92 percent for each ear. The examination results for the left ear correspond to level II hearing loss under Table VI. For the right ear, the examination results also correspond to level II under Table VI. Accordingly, the auditory acuity level II applies to both the left and right ears. The intersection point of level II for the left ear and level II for the right ear under Table VII shows that the Veteran's hearing loss warranted a 0 percent or noncompensable disability rating. This hearing impairment measurement is not higher than that currently assigned for the period between December 15, 2006 and May 31, 2009.


In April 2009, the Veteran was seen by Dr. M.G., a private audiologist at Pollard Professional Hearing Services in Macon, Georgia. The Board notes that the results of this audiological evaluation are in neither graphical form or numerically interpreted. Instead, Dr. M.G. signed a one-page typewritten form on letterhead stationary that was attached to a graphical representation of the Veteran's June 2005 private audiogram. According to this signed note, pure tone testing in April 2009 revealed thresholds with a mild to severe sensorineural hearing loss from 1000 to 8000 Hz bilaterally with speech reception thresholds consistent with pure tones bilaterally. 

When Dr. M.G. compared the April 2009 audiogram with the June 2005 audiogram, she found that the Veteran's hearing sensitivity had for the most part decreased. For example, she noted that thresholds in 2005 were obtained from 15-80 dB compared to from 20-90 dB in 2009, which she said showed a decrease in sensitivity throughout the frequency range. She also reported that word recognition scores were 56 percent for the right ear and 72 percent for the left ear, though it is unclear whether the Maryland CNC was used in determining these scores. Regardless, clarification of the April 2009 private audiogram is not needed because this is not a situation where a private examination report reasonably appears to contain information necessary to decide the claim, but is unclear or nor suitable for rating purposes. See Savage v. Shinseki, 24 Vet. App. 259 (2011). Here, there is nothing to clarify or to be interpreted. Rather, necessary information is absent. The report simply does not contain numeric or graphical results for the 1000, 2000, 3000, or 4000 Hz frequency for either ear. Therefore, this report does not contain information necessary to properly decide the claim. Moreover, further efforts to obtain information from the Pollard Professional Hearing Services would no doubt prove futile inasmuch as the Veteran never responded to the September 2009 duty-to-assist letter which had requested authorization from the Veteran to permit VA to obtain treatment information from Pollard. In addition, the results of the July 2010 VA examination, while not conducted during the time period now on appeal, showed that the Veteran manifested level III hearing in his left ear and level V hearing in his right ear, which measurement is not higher than the currently assigned 10 percent disability rating for the period from December 15, 2006 to May 31, 2009.

VA medical records dated from December 2006 to September 2008 show audiological consultations related to the repair of the Veteran's hearing aids. 

In light of the level II left ear hearing loss and level II right ear hearing loss demonstrated upon VA audiological examination in November 2008, a rating in excess of 10 percent is not warranted for the period from December 15, 2006 to May 31, 2009. Since December 15, 2006, there is no other evidence found within the claims file that would support a rating higher than 10 percent. Therefore, based on the evidence of record noted above, the Board finds that a rating in excess of 10 percent for the period from December 15, 2006, to May 31, 2009 is not warranted.

The Board acknowledges the Veteran's assertions that his hearing impairment is very significant and that he should receive a higher rating because of the effect hearing loss has on his livelihood. However, the Board is constrained by the applicable regulations, which require evaluation by strict mechanical application of the tables that make up the rating criteria for hearing impairment.

The Veteran is competent to report his symptoms and the effect his hearing loss has on his work, customers, and income. To the extent that the Veteran has asserted that he warrants a higher staged rating for bilateral hearing loss for the period from December 15, 2006 to May 31, 2009, the Board finds that the preponderance of the evidence does not support his contentions during this time period and that a staged rating during this time period in excess of 10 percent for bilateral hearing loss is not warranted. The Board is responsible for weighing all of the evidence and finds that the preponderance of the evidence is against a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006 to May 31, 2009. There is no reasonable doubt to be resolved. Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

The above determination continuing the Veteran's 10 percent rating for his hearing loss is based on application of pertinent provisions of VA's Schedule for Rating Disabilities. The Board notes that there is no indication that referral is warranted for consideration of the assignment of a disability rating on an extraschedular basis during the period of this appeal. See 38 C.F.R. § 3.321(b).

The Court recently clarified the analytical steps necessary to determine whether referral for such consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). A determination of whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology first must be made by the RO or Board. If the rating criteria are inadequate, the RO or Board must proceed to determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration.

In this case, there has been no showing that the Veteran's disability picture could not be contemplated adequately by the applicable schedular rating criteria discussed above. The Veteran's hearing impairment measurements were applied to a mechanical application table pursuant to the applicable criteria as authorized by associated statutes, regulations, and caselaw. Indeed, as is explained above in denying a higher rating, it appears that the Veteran's current 10 percent disability rating is in excess of that for which he actually qualifies during the time period between December 15, 2006 and May 31, 2009. Given that the applicable schedular rating criteria are more than adequate in this case, the Board need not consider whether the Veteran's hearing disability picture includes exceptional factors. Referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).



 [Continued on Next Page]

ORDER

Entitlement to a rating in excess of 10 percent for bilateral hearing loss, for the period from December 15, 2006, to May 31, 2009, is denied.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs