Walter BRUCE, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–353.

United States Court of Veterans Appeals.

Argued Jan. 14, 1998.

Decided Aug. 28, 1998.

Geralyn R. Lawrence, Bowie, MD, for appellant.

Adam Llewellyn, with whom Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, Washington, DC, were on the briefs, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II veteran Walter Bruce, appeals, through counsel, a December 6, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that denied service connection for bilateral hearing loss and a compensable rating for service-connected otomycosis of the left ear. Record (R.) at 6, 13. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the BVA decision in part and vacate it in part and remand a matter.

## I. Background

The appellant served on active duty in the U.S. Army from February 1943 to February 1946. R. at 58–59. A February 1943 induction medical examination reported hearing acuity as 15/15 bilaterally. R. at 17. He served as a fire-control instrument operator, which involved directing and conducting artillery fire (R. at 59), apparently without the use of earplugs (R. at 148). His discharge examination indicated, in relevant part, otomycosis in his left ear. R. at 50. ("Otomycosis" refers to a "fungal infection of the external auditory meatus". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1205 (28th ed.1994).)

In March 1946, immediately after his discharge, the veteran filed an application with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) for VA service-connected disability compensation or non-service-connected pension. In the box where the application form requested the disability for which compensation was being sought, he responded: "Fungus infection in ear–to present–impairs [illegible] hearing–[illegible] 1945–". Supplemental (Suppl.) R. at 1–2. The VA rating worksheet for this application listed the disabilities on different lines as "otomycosis" and "hearing" and recorded measured hearing levels that do not suggest any hearing loss. Suppl. R. at 4. The VARO decision awarding service connection also listed both "otomycosis" and "hearing", but on the same line. R. at 62. The March 1946 RO award letter informing the veteran of the RO decision, however, provided only that he had been awarded service connection for a "Hearing Condition", rated at 0% disabling. Suppl. R. at 6.

In 1949, an RO reevaluated the veteran's original claim, and the accompanying decision is almost identical to the 1946 RO decision in listing both "otomycosis" and "hearing" on the same line and noting measured hearing levels that do not suggest any hearing loss. R. at 64. An October 1949 RO letter again informed the veteran only that he had been awarded service connection for a hearing condition, rated at 0% disabling. Suppl. R. at 8.

The veteran sought disability compensation in 1962, complaining of a fungal infection over various parts of his body, including his ears. R. at 66–69. An examination report diagnosed various skin conditions (R. at 76), but a March 1963 RO decision denied service connection for these conditions, noting that, although the veteran was "service connected for otomycosis", there was "no relationship

between the skin condition[s] now diagnosed and the otomycosis during military service" (R. at 78).

In November 1990, the veteran filed an application for compensation or pension seeking the following: "Re-open s/c claim for ear/hearing and appendicitis & skin. Request hearing examination at VAMC [illegible] & confirm my hearing loss (s/c)". R. at 83–86. The RO determined in December 1990 that "service connection for hearing loss [was] not established as [it was] not shown to have been incurred in or aggravated by military service" and also that "there [was] no evidence to show any increased severity in the service-connected ... fungus of the ears"; hence, the RO denied both claims pertaining to his ears. R. at 88–89. The veteran asked for reconsideration and, in support, submitted letters from Drs. Resneck (R. at 97) and Winder (R. at 100), as well as a January 1991 letter from Dr. Pou, a private physician, who stated:

> Both ear canals were slightly dry and scaly, but he did have a little ear wax. The tympanic membranes appeared normal. There was no evidence of any fungus infection at this time.

R. at 91. An April 1991 VA examination report showed average puretone thresholds of 55 decibels for the right ear and 44 decibels for the left ear with speech recognition of 92% bilaterally. R. at 111. In addition, a VA medical examination report received by the RO in May 1991 concluded:

> Hearing may be diminished.... The ear canals are clean. The eardrums show no perforation or discharge.

R. at 116. Based on the above findings, a May 1991 RO decision confirmed the March 1963 RO decision and noted that the "[m]ost recent examination shows no fungus infection at all" and that "[s]ervice connection for hearing loss is not shown to have been incurred in or aggravated by military service". R. at 123. The veteran timely appealed to the Board. R. at 125, 133.

In support of the appealed claims for an increased disability rating for otomycosis and for service connection for hearing loss, the veteran and his wife testified under oath before the RO in October 1992 about the origins of these conditions, about the symptoms he was then experiencing, and about the need for daily self-treatment of his ears. R. at 144–53. In November 1994, the BVA remanded the case for further development of the claims, including a "VA examination" to determine the extent and severity of his service-connected otomycosis and of his non-service-connected hearing loss. R. at 171–73.

In accordance with the Board's remand, a February 1995 VA examination was conducted. R. at 175–82. Records from that examination showed average puretone thresholds of 59 decibels for the right ear and 46 decibels for the left ear with speech recognition of 80% bilaterally. R. at 176. In addition, in an ear examination report signed by Dr. Hollier, it was noted that the veteran had a medical history of left ear "swollen periodically [with] slight pain and itching" and complained of those symptoms; that the veteran's auricles, external canals, and tympanic membranes were all described as "WNL" (within normal limits); that the only "active ear disease" recorded was sensorineural hearing loss; and that he was diagnosed as having bilateral sensorineural hearing loss "[b]y patients [sic] history". R. at 180–82. Thereafter, in an April 1995 medical opinion Dr. Gilbert (it is unclear whether or not Dr. Gilbert was a VA employee) noted the bilateral hearing loss and opined: "There is no etiological relationship between service[-]connected otomycosis of left ear and hearing loss of left ear". R. at 184. Subsequently, the RO confirmed its denial of service connection for bilateral hearing loss and of an increased evaluation for service-connected otomycosis of the left ear. R. at 186–87.

In the December 6, 1995, BVA decision here on appeal, the Board, relying on the April 1991 and February 1995 VA examination reports, concluded that the veteran's hearing loss was not incurred in or aggravated by service and thus denied service connection for bilateral hearing loss. R. at 6. The Board also concluded that the veteran had not submitted evidence of symptoms sufficient to meet the scheduler criteria for a compensable rating for otomycosis of the left ear and denied the rating-increase claim. R. at 12.

At the January 14, 1998, oral argument, the Court directed the parties to file supplemental briefs. The appellant filed his supplement brief on February 20, 1998, and the Secretary filed his supplemental brief on April 7, 1998.

## II. Analysis

As an initial matter, the Court notes that the veteran contends, inter alia, that VA failed to assist him in the development of a claim, raised in his testimony before the Board, for service connection for tinnitus. Appellant's Brief (Br.) at 21–22. However, noting in its decision that the tinnitus issue had been raised by the appellant for the first time in that appeal, the Board properly referred the matter to the RO for appropriate action. R. at 5; *see Godfrey v. Brown,* 7 Vet.App. 398, 409 (1995). The Court will now address the veteran's remaining two claims.

### A. *Service Connection for Hearing Loss*

 The appellant contends that the Board improperly *refused to recognize that* service connection for hearing loss had previously been granted in 1946 and later reconfirmed in 1949. Appellant's Br. at 8–11. As conceded by the Secretary, the December 1995 Board decision, in denying the veteran's claim regarding his hearing loss, overlooked records pertaining to the 1946 and 1949 RO determinations. These records create some confusion, however, because the records from the RO decisions contain language different from the subsequent notice letters sent to the veteran informing him of the RO's determinations. Both of the RO decisions list "hearing" and "otomycosis" on the same line, thereby suggesting that the veteran's hearing condition could be part of the service-connected disability that was assigned a 0% rating. R. at 62, 64. The subsequent notice letters, however, mention only that the veteran had been granted service connection for a hearing condition, thereby creating confusion as to whether the RO had granted service connection for otomycosis or for hearing loss, or, alternatively, for both conditions. Suppl. R. at 6, 8. Subsequent RO decisions noted that the veteran's otomycosis had been service connected. R. at 78, 89, 123, 186–87.

The Court holds that these inconsistent records do not constitute a mere clerical error but rather create a true ambiguity as to whether the veteran had been service connected for a hearing condition in 1946 and 1949. *Cf. Lozano v. Derwinski,* 1 Vet.App. 184, 185 (1991). The Court held in *Lozano* that an award letter informing the veteran that he had been granted service connection for his claimed condition, when the RO decision had in fact clearly denied service connection, constituted a simple clerical error and could not be relied upon as a basis for benefits. *Ibid.* In the present case, however, the 1946 and 1949 RO decisions may reasonably be read as awarding service connection for the veteran's hearing condition (*see* R. at 62, 64), as the 1946 and 1949 notice letters seem to state (*see* Suppl. R. at 6, 8), and thus the inconsistency in this record cannot be dismissed as a mere clerical error.

Although the Court could render a decision as a matter of law as to whether the veteran's hearing condition had ever been service connected, the ambiguity that results from these inconsistent records convinces the Court that it should avoid making an initial determination. *See Dudnick v. Brown,* 10 Vet.App. 79, 80 (1997) (remanding to Board because "[i]t is not [the] function of this Court to make such a determination [on application of new rating schedule code] in the first instance"). Thus, the Court will remand the matter for the Board to render a determination as to whether the 1946 or 1949 RO decisions had granted service connection for the veteran's hearing condition. *See* 38 U.S.C. § 5107(b); *Williams (Willie) v. Brown,* 4 Vet.App. 270, 273–74 (1993) ("where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise"). On remand, the Board is to determine only whether the 1946 and 1949 RO decisions had granted an award of service connection, even if done in error, not whether there was sufficient evidence in the record at the time of the decisions to support such an award.

If, on remand, the Board determines that service connection for hearing loss had been

granted by either the 1946 or 1949 RO decision, the Board is precluded by statute from severing that award even if it appears that service connection had been granted in error. *See* 38 U.S.C. § 1159. Section 1159 provides that service connection that has been in effect for ten or more years may not be severed on or after January 1, 1962, except upon certain specified conditions. *Ibid.* As the Secretary concedes, under the plain meaning of the statute, this protection applies to decisions rendered prior to the statute's enactment in 1960, and none of the specified statutory exceptions pertains to an erroneously granted benefit in effect for ten or more years. This Court has previously held that the "plain meaning [of a statute] must be given effect unless a literal application of [the] statute will produce a result demonstrably at odds with the intention of the drafters", *Johnson (Duc Tu) v. Brown*, 9 Vet.App. 369, 371 (1996) (internal quotations omitted), and we do not believe that extending section 1159 protection to an erroneous grant of service connection in 1946 or 1949 contravenes the intent of the statute's drafters, *see* Letter from Deputy Administrator Bradford Morse to Chairman Olin Teague (July 24, 1959), *reprinted in* H.R. REP. No. 1529, 86th Cong., 2d Sess. (1960) ("bill would require the perpetuation of such error if it were not discovered until the lapse of 10 or more years after service connection of the disability"). Consequently, a determination by the Board that the veteran's hearing condition had been service connected in the 1940s would require the Board to treat the veteran's present claim as a claim for an increased rating because service connection would have been in effect for more than ten years.

Additionally, the Court notes that, based on the record from the February 1995 VA audiologist's examination (R. at 175–82), the veteran currently appears to meet the criteria for a 10% disability rating for hearing loss and, moreover, appears to have satisfied these criteria since 1991 (R. at 111, 116). *See* 38 C.F.R. § 4.85, Tables VI and VII (1997); *Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992) ("disability ratings for hearing impairment are derived by a mechanical application of the rating schedule"). Further, regarding the hearing-loss claim, the veteran contends,

Appellant's Br. at 18–21, that VA violated its duty to assist under 38 U.S.C. § 5107(a) by failing to comply with the November 1994 Board remand order for a nexus opinion by an examining physician (R. at 171–73), because Dr. Gilbert, rather than the examining physician, provided the medical opinion as to the lack of relationship between the otomycosis and the veteran's hearing loss. In *Stegall v. West*, 11 Vet.App. 268, 271 (1998), the Court held that "where ... the remand orders of the Board ... are not complied with, the Board itself errs in failing to insure compliance". Accordingly, on remand an *examining* physician should be requested to express an opinion, based on an assumption that the veteran is not already service connected for hearing loss, as to the likelihood of any relationship between the veteran's otomycosis and his hearing loss and to include in the examination report a measurement of the veteran's current hearing-loss levels. Such an examination regarding the veteran's current hearing loss would also form the basis for any current rating if that condition is found to have been or to be service connected.

### B. Increased Rating for Otomycosis

▮ The appellant argues that the Board erroneously denied his appeal for an increased rating for his service-connected otomycosis, currently rated 0% disabling. Appellant's Br. at 15–18. A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in disability. *See Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992); *cf. Jones (Wayne) v. Brown*, 7 Vet.App. 134, 137–38 (1994). The veteran has asserted that he should be awarded a higher rating for his otomycosis, and the Court thus holds that this claim is well grounded.

▮ Disability ratings are to be based, as far as practicable, "upon the average impairments of earning capacity resulting from such injuries in civil occupations". 38 U.S.C. § 1155; *see* 38 C.F.R. § 4.1 (1997). The determination of the level of disability due to otomycosis is made under 38 C.F.R. § 4.87a, Diagnostic Code (DC) 6210, which provides

for a 10% rating in the following circumstance:

> With swelling, dry and scaly or serous discharge, itching, requiring frequent and prolonged treatment ........... 10

The assignment of a rating is a factual determination. *Johnson (Brenda) v. Brown*, 9 Vet.App. 7, 9 (1996); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). The Court reviews BVA factfinding under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4).

■■■ Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 C.F.R. § 3.159 (1997); *Littke v. Derwinski*, 1 Vet.App. 90, 91–92 (1990). Under certain circumstances, "fulfillment of the statutory duty to assist ... includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of the prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991). "If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1997). The appellant argues for a remand to permit another VA examination of his ears to be conducted. He relies on *Ardison v. Brown*, where the Court held that the duty to assist requires that, when a claimant submits a claim for a disease cyclical in the manifestation of its symptoms, such as tinea pedis (athlete's foot), VA must conduct an examination during the active stage of the disease. *Ardison*, 6 Vet.App. 405, 408 (1994). In so holding, the Court stated: "[I]t is the frequency and duration of the outbreaks and the appearance and virulence of them *during the outbreaks* that must be addressed". *Id.* at 407 (quoting *Bowers v. Derwinski*, 2 Vet. App. 675, 676 (citing 38 C.F.R. § 4.1 (1991))).

■■■ As to what constitutes competent evidence, "[a]s a general matter, in order for any testimony to be probative of any fact, the witness must be competent to testify as to the facts under consideration". *Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (citing *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992)). In *Savage v. Gober*, the Court noted that whether medical evidence was needed to demonstrate the existence of a disease "depends on the nature of the veteran's present condition, i.e., whether it is of a type that requires medical expertise to identify it as the same condition as that in service or during a presumption period, or whether it can be so identified by lay observation". *Savage*, 10 Vet.App. 488, 495 (1997). Lay testimony is competent only when it regards symptoms of an injury or illness and only so long as it remains centered upon matters within the knowledge and personal observations of the witness. *See Layno*, 6 Vet.App. at 470; *see also Falzone v. Brown*, 8 Vet.App. 398, 403 (1995); *Horowitz v. Brown*, 5 Vet.App. 217, 221–222 (1993). Thus, for example, lay testimony is competent to show that an individual had difficulty breathing, *see Layno*, 6 Vet. App. at 471, or suffered from flat feet, *see Falzone, supra*. However, when a medical condition is not readily observable and is not centered upon matters within the knowledge and observation of the witness, lay testimony as to its existence is not competent, and medical evidence is then required. *See Savage, supra* (medical evidence required to find nexus between back condition and arthritis); *Epps v. Brown*, 9 Vet.App. 341, 344 (1996), *aff'd*, 126 F.3d 1464 (Fed.Cir.1997) (requiring medical evidence to show that skin condition caused blood clots that ultimately resulted in heart condition).

■■■ In the present case, the veteran has submitted sworn testimony that his otomycosis was manifested by discharge, dryness, scaling, and itchiness (R. at 145–46), and in February 1995 he presented a medical history that he suffers periodically from a swollen left ear with slight pain and itching (R. at 180). Moreover, he and his wife testified that he treated his ears on a daily basis with ear cleaner, peroxide, and Vaseline. R. at 147. Because this testimony relates to

symptoms that are readily observable, like those of shortness of breath or flat feet, and because this testimony is centered upon matters within the knowledge and personal observations of the witnesses, the testimony is competent to show that the veteran suffered from these symptoms at various times. *See* *Layno* and *Falzone*, both *supra.*

The Court notes that the record on appeal might be read as containing some substantiation of the veteran's assertion that he experiences periodic flare-ups of his otomycosis. A VA medical examination report filed in May 1991 found no evidence of otomycosis (R. at 116), whereas Dr. Pou's January 1991 private medical examination report, although not finding evidence of a fungus infection at that time, had found the veteran's ears to be dry and scaly (R. at 91), symptoms that are specified in DC 6210. The veteran's and his wife's subsequent testimony might also be read as suggesting that more recently his ear condition has required daily attention, and in February 1995 Dr. Hollier's ear examination reported a medical history of the veteran's left ear being "swollen periodically [with] slight pain and itching". However, on that February 1995 examination report, Dr. Hollier also reported that the veteran had then complained of "[left] ear, swollen, itching, slight pain" (R. at 180) yet Dr. Hollier found all aspects of the left ear within normal limits and recorded as "active ear disease" only bilateral sensorineural hearing loss (R. at 180–82). Under these circumstances, the Court can conclude only that the most recent VA examination was conducted when the veteran's otomycosis was "active" within the meaning of *Ardison, supra.*

Accordingly, the Court will affirm the Board's denial of the veteran's otomycosis rating-increase claim because there was no violation of VA's section 5107(a) duty to assist and because the Board's decision had a plausible basis in the record—the lack of pertinent symptomatology found during Dr. Pou's January 1991 private examination (R. at 91), VA's May 1991 examination (R. at 116), and VA's February 1995 examination (R. at 180–82)—*see* 38 U.S.C. § 7261(a)(4); *Johnson, Lovelace,* and *Gilbert,* all *supra.* Of course, the appellant is always free to

seek an increased rating for his service-connected otomycosis by bringing to the attention of VA competent evidence of the pertinent symptomatology in his left ear under DC 6210.

### III. Conclusion

Upon consideration of the record and the pleadings of the parties, the Court affirms the December 6, 1995, BVA decision as to the otomycosis rating-increase claim because the appellant has not demonstrated that the Board committed error—in its findings of fact, conclusions of law, procedural processes, articulation of reasons or bases, or application of the benefit-of-the-doubt rule—that would warrant reversal or remand under 38 U.S.C. §§ 5107(a), (b), 7104(a), (d)(1), 7261; 38 C.F.R. § 4.87a, DC 6210. As to the claim for service connection for hearing loss, the Court vacates the Board decision and remands the matter for further development followed by adjudication on the merits, consistent with this opinion and in accordance with all other applicable law and regulation, including section 302 of the Veterans' Benefits Improvement Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court); *see* *Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). On remand, "the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which the notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.