Citation Nr: 1326650 
Decision Date: 08/21/13 Archive Date: 08/29/13

DOCKET NO. 11-16 007 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to an initial compensable rating for bilateral hearing loss disability.

2. Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD). 

3. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Allen Gumpenberger, Agent


ATTORNEY FOR THE BOARD

K. R. Fletcher, Counsel


INTRODUCTION

The Veteran served on active duty from September 1969 to April 1971.

This case is before the Board of Veterans' Appeals (Board) on appeal of March 2010 and April 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut. 

The Veteran has asserted, and the evidence of record suggests, that service-connected PTSD has resulted in unemployability. The Court of Appeals for Veterans Claims (Court) has held that a claim for TDIU can be inferred as part of the original claim for a higher initial rating in certain circumstances. Rice v. Shinseki, 22 Vet. App. 447 (2009) (per curium). For the reasons set forth below, the Board finds that a TDIU claim has been reasonably raised by the record. Therefore, the issues on appeal have been recharacterized as shown above. 

In addition to the paper claims file, there is a Virtual VA (VVA) electronic claims file associated with the Veteran's claim. The documents in the VVA file are either duplicative of the evidence in the paper claims file or are irrelevant to the issues on appeal.

The issue of entitlement to a TDIU is addressed in the REMAND that follows the order section of this decision. 


FINDINGS OF FACT

1. Throughout the period of the appeal, the Veteran's service-connected bilateral hearing loss disability has been manifested by no worse than Level II hearing acuity in the right ear and Level I hearing acuity in the left ear.

2. Throughout the period of the appeal, the Veteran's PTSD has been manifested by no more than occupational and social impairment, with deficiencies in most areas, such as work, family relations, or mood, due to such symptoms as: near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships. 


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral hearing loss disability have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2012). 

2. The criteria for a rating in excess of 70 percent for PTSD are not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2012). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2012), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2012), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The Board also notes that the Court has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). The Court further held that VA failed to demonstrate that "lack of such a pre-AOJ-decision notice was not prejudicial to the appellant, see 38 U.S.C. § 7261(b)(2) (as amended by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832 ) (providing that '[i]n making the determinations under [section 7261(a)], the Court shall...take due account of the rule of prejudicial error')." 

The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Regarding the hearing loss issue, the appeal is from the initial rating assigned with awards of service connection. The statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, statutory notice has served its purpose, and its application is no longer required because the claim has already been substantiated. See Dingess, supra. The Veteran is exercising his right to appeal the rating assigned. An April 2011statement of the case properly provided the Veteran with notice of the criteria for rating hearing loss disabilities, and further notice on the downstream issue of an increased initial rating, including of what the evidence showed, and why the current rating was assigned. The Veteran has had opportunity to respond. He is not prejudiced by this process; notably, he does not allege that notice in this case was less than adequate or that he is prejudiced by any notice deficiency. 

Regarding the PTSD issue, the record reflects that the Veteran was provided all required notice by correspondence dated in November 2010, prior to the initial adjudication of the claim in December 2010. 

Regarding VA's duty to assist, all appropriate development to obtain the Veteran's pertinent medical records has been completed. The Veteran has not identified any pertinent, outstanding records that could be obtained to substantiate his claims. The Board is also unaware of any such records. Moreover, the Veteran has been afforded appropriate and adequate VA examinations in March 2010 and November 2010. Given that the examination reports set forth detailed examination findings in a manner which allows for informed appellate review under applicable VA laws and regulations, the Board finds the examinations to be sufficient. Therefore, the Board concludes that VA has complied with its duty to assist the Veteran. 

Accordingly, the Board will address the merits of the claims.

Law and Regulations - Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 . 

At the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found-a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999). The Court has held that "staged" ratings are appropriate for an increased rating claim where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

As a general matter, lay statements are considered to be competent evidence when describing the features or symptoms of an injury or illness. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995). As a layperson the Veteran is only competent to report observable symptoms--not clinical findings which are applied to VA's Schedule for Rating Disabilities. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Bruce v. West, 11 Vet. App. 405, 410-11 (1998).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Board notes that it has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims.

Hearing Loss Disability

Disability ratings for hearing loss disability are derived from mechanical application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). 

The rating schedule establishes 11 auditory hearing acuity levels based upon average puretone thresholds and speech discrimination. See 38 C.F.R. § 4.85. 

An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. Examinations will be conducted without the use of hearing aids. 38 C.F.R. § 4.85(a). 

Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination," is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the row and column intersect. 38 C.F.R. § 4.85(b). 

Table VIa, "Numeric Designation of Hearing Impairment Based Only on Puretone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on puretone threshold average. Table VIa is used when the examiner certifies that the use of the speech discrimination test is not appropriate due to language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of § 4.86. 38 C.F.R. § 4.85(c). 

"Puretone threshold average" as used in Tables VI and VIa is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz and divided by four. This average is used in all cases (including those of § 4.86) to determine a Roman numeral designation from Tables VI and VIa. 38 C.F.R. § 4.85(d). 

Table VII, "Percentage Evaluations of Hearing Impairment," is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment in each ear. The horizontal rows represent the ear having better hearing and the vertical columns represent the ear having the poorer hearing. The percentage evaluation is located at the point where the row and the column intersect. 38 C.F.R. § 4.85(e). 

The Court has held that, "in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report." Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007).

In April 2008 the RO received the Veteran's claim for service connection for bilateral hearing loss disability. 

On VA examination in March 2010, the examiner noted the Veteran was Vietnam combat veteran. Currently, he complained of problems hearing, understanding speech and using the telephone. On audiological evaluation, pure tone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
25
35
50
60
43
LEFT
25
20
35
40
30

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and of 94 percent in the left ear. Applying the values above to Table VI results in a Level II Roman numeral designation for the right ear and a Level I designation for the left ear. Application of a Level II designation to a Level I designation in Table VII results in a noncompensable rating. 

The March 2010 rating decision on appeal granted service connection for bilateral hearing loss disability, and rated it as noncompensable, effective April 23, 2008. The Veteran appealed the rating assigned.

In an October 2010 notice of disagreement, the Veteran's agent stated, "The [V]eteran contends that his hearing loss should be compensable" and requested another examination. He did not contend that the March 2010 VA examination was inadequate or that the Veteran's hearing loss disability had gotten worse since such examination. The Veteran has not reported receiving any treatment for his bilateral hearing loss disability after March 2010. Indeed, the Veteran did not present any objective medical evidence to support his bare assertion that his service-connected hearing impairment was compensable in light of the competent and credible medical evidence to the contrary. 

The Veteran's bilateral hearing loss disability is evaluated as 0 percent disabling for the period of the appeal. On review of the record, it is evident the criteria for a compensable rating under Diagnostic Code 6100 are not met at any point during the appeal period. Although the audiological evaluation clearly shows hearing loss disability, the hearing loss does not meet the compensable level under the rating schedule. 

Specifically, the medical evidence for the period of the appeal shows that the Veteran's service-connected bilateral hearing loss disability has been manifested by no worse than Level II hearing acuity in the right ear and Level I hearing acuity in the left ear. Applying these results to the Table VII chart, a Level II for the right ear, combined with a Level I for the left ear, will result in a noncompensable (zero percent) compensation evaluation. 

Therefore, a noncompensable disability rating is applicable under the provisions of 38 C.F.R. § 4.85, Table VII, for the period of the appeal. Fenderson, supra. 

In addition, VA must consider all favorable lay evidence of record. 38 U.S.C.A. § 5107(b); Caluza v. Brown, 7 Vet. App. 498 (1995). Accordingly, in addition to the medical evidence above the Board has considered the lay evidence provided by the Veteran in the form of his correspondence to VA and his comments to the VA examiner, in which he generally contends his disability should be rated higher than the current noncompensable rating. He has also noted specific complaints with his hearing, as noted above.

A layperson is competent to testify in regard to the onset and continuity of symptomatology. Heuer v. Brown, 7 Vet. App. 379, 384 (1995); Falzone, supra. However, the rating schedule for hearing loss disability is a reasonable exercise of the Secretary's rulemaking authority. Martinak, supra. Whereas the Veteran's hearing loss disability has not been shown by medical or lay evidence to be worse than that measured during audiological evaluation, the lay evidence does not support a claim for a higher rating at any point during the period of the appeal. 

PTSD

Under the General Rating Formula for Mental Disorders, total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name warrants a 100 percent evaluation. 38 C.F.R. § 4.130, Diagnostic Code 9411.

Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships warrants a 70 percent evaluation. Id.

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is based on a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32). 

A score of 21- 30 is indicated when "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home or friends)." 

A score of 31-40 is indicated when there is, "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." 

A score of 41-50 is assigned where there are, "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." 

A score of 51-60 is appropriate where there are, "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." 

A score of 51 to 60 is assigned where there are moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers of co-workers).

A score of 61-70 is indicated where there are, "Some mild symptoms (e.g., depressed mood and mild insomnia OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." 

A score of 71-80 is appropriate when, "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument; no more than slight impairment in social occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."

Historically, a February 2009 rating decision awarded service connection for PTSD. A 30 percent evaluation was assigned.

In October 2010, the Veteran submitted a claim for increased rating.

A November 2010 VA examination report notes the Veteran's complaints of nightmares, recurrent thoughts of Vietnam two to four times per week, irritability and hypervigilence. He stated that he was no longer interested in hiking and did not go to the movies because it was too crowded. He enjoyed reading books and sports magazines and watching television. He was depressed but denied suicidal ideation. He denied panic attacks. The Veteran reported retiring from his job in 2009 because he no longer wanted to interact with the public. He was living with his wife. He said he cared for her but she says he is emotionally distant. He had no friends. He denied seeking or receiving any psychiatric treatment or taking any psychiatric medication. On examination, the Veteran's speech and affect were constricted. Mood was emotionally withdrawn, and occasionally irritable. Thought process was logical and coherent. There was no suicidal or homicidal ideation. There were no auditory hallucinations, visual hallucinations, or delusions. Attention and concentration were mildly impaired. The diagnosis was PTSD, the GAF score was 45. Prognosis was described as poor. The examiner opined that the Veteran was competent to manage his funds. The examiner commented that it was likely the Veteran's PTSD symptoms led to decreased ability to tolerate frustration and multitask at work, and that he currently sticks to one simple task at a time but does complain that he forgets what he is doing even with simple tasks. 

In a December 2010 rating decision, the evaluation of PTSD was increased to 50 percent effective October 18, 2010.

In a December 2010 notice of disagreement, the Veteran's agent essentially stated that the Veteran's symptoms warranted a 70 percent rating .

In an April 2011 rating decision, the evaluation of PTSD was increased to 70 percent effective October 18, 2010.

A review of the Veteran's VA treatment records does not show that he received any psychiatric treatment during the period of the appeal.

The Veteran's PTSD has been rated 70 percent disabling for the period of the appeal. The evidence for this period shows that the Veteran had taken an early retirement in 2009, just prior to the period of this appeal. He no longer enjoyed hiking, but still enjoyed reading and watching television. His speech was constricted; however, he was still able to communicate and never exhibited grossly inappropriate behavior. The Board has considered whether the next higher (100 percent) rating might be warranted for the period. As noted above, for the period at issue, the Veteran was alert and oriented, and he denied hallucinations and delusions. The Veteran has not been a real danger to himself or others and has been functionally cogent and free of delusions or hallucinations. He has maintained at least minimal social contact with his wife despite his preference for isolation. He did not show disorientation to time or place. He did not show memory loss. There is accordingly no reasonable basis on which the Board can find him to be totally disabled due to his PTSD for the period of the appeal.

In determining that the criteria for a 100 percent rating for the Veteran's psychiatric symptoms shown are not met, the Board has considered the rating criteria in the General Rating Formula for Mental Disorders not as an exhaustive list of symptoms, but as examples of the type and degree of the symptoms, or effects, that would justify a particular rating. The Board has not required the presence of a specified quantity of symptoms in the rating schedule to warrant the assigned rating for the psychiatric disability. See Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Moreover, the GAF score of 45 that was assigned on VA examination more closely reflects those of serious symptoms or serious impairment in social, occupational, or school functioning, providing highly probative evidence against this claim. 

Extra-Schedular Consideration

The remand below for TDIU encompasses factors related to employability that are associated with extra-schedular consideration. As such, the Board finds that the question of whether an extra-schedular rating may be awarded is inextricably intertwined with the remand below. 


ORDER

An initial compensable rating bilateral hearing loss disability is denied. 

A rating in excess of 70 percent for PTSD is denied.


REMAND

After a thorough review of the claims file, the Board finds that further evidentiary development is necessary prior to the adjudication of the Veteran's claim for TDIU, which has been reasonably raised by the record and therefore an issue on appeal that is properly before the Board. Rice v. Shinseki, 22 Vet. App. 447 (2009) (per curium). The Board sincerely regrets the delay caused by this additional remand but finds that the development requested herein is necessary prior to a final adjudication of the appeal.

During a November 2010 VA examination, the Veteran essentially stated that he Veteran was unable to work because of his service-connected PTSD. He reported that he retired early from his job because interactions with his co-workers and the public caused him great anxiety that he could not tolerate. Indeed, the November 2010 VA examination report specifically commented that it was likely the Veteran's PTSD symptoms led to decreased ability to tolerate frustration and multitask at work.

The above evidence raises the issue of entitlement to TDIU as a result of service-connected PTSD, but the Veteran has not received notice regarding what is necessary to substantiate a claim for TDIU, nor has he received the appropriate application for TDIU. On remand, he should be provided with such notice and application and be invited to complete the application with information regarding past employment and education. Thereafter, the RO or the AMC should adjudicate this matter in the first instance, to avoid any prejudice to the Veteran. See e.g. Bernard v. Brown, 4 Vet. App. 384, 393 (1993). 

Accordingly, the case is REMANDED to the RO for the following action:

1. The RO shall attempt to obtain and associate with the claims file any outstanding psychiatric records from VA facilities and/or private sources, as may be identified by the Veteran. The RO shall make all reasonable efforts in this regard.

2. Provide the Veteran and his agent with the appropriate notice accompanied by the claims forms necessary to file and complete a TDIU claim.

3. Undertake any additional development deemed necessary in light of any evidence obtained, to include a VA examination if deemed necessary.

4. Then adjudicate the Veteran's claim for TDIU. If the benefit sought on appeal is not granted to the Veteran's satisfaction, he and his agent should be provided a supplemental statement of the case and an appropriate period of time for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter that the Board has remanded. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs