﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 181113-893
DATE: November 27, 2019

ORDER

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for prostate cancer is granted.

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for coronary artery disease is granted.

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for burns of both arms is granted.

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for facial burns is granted.

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for headaches is granted.

New and relevant evidence having been submitted, readjudication of the previously-denied claim for entitlement to service connection for dental trauma, to include for treatment purposes, is granted.

Service connection for prostate cancer is granted.

Service connection for coronary artery disease is granted.

Service connection for residuals of burns of both arms is granted.

Service connection for residuals of facial burns is granted.

Service connection for headaches is granted.

REMANDED

The appeal for entitlement to service connection for residuals of dental trauma, to include for treatment purposes, is remanded.

FINDINGS OF FACT

1. New evidence received after the March 2018 denial is relevant to the issues of entitlement to service connection for prostate cancer, coronary artery disease, residuals of burns affecting both arms and the face, headaches, and residuals of dental trauma.

2. The Veteran set foot in Vietnam by landing at Da Nang for aircraft repair prior to returning to an aircraft carrier and, thus, he is presumed to have been exposed to herbicides in service.

3. Prostate cancer and coronary artery disease are presumed under law to have been caused by exposure to herbicides in Vietnam.

4. The Veteran’s arms and face were burned during a rocket ejection from his plane, and incoming phosphorus flak anti-aircraft fire, under combat conditions over North Vietnam. 

5. The Veteran has had recurrent headaches ever since ejecting from his plan under combat conditions over North Vietnam.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claims for service connection for prostate cancer, coronary artery disease, residuals of burns affecting both arms and the face, headaches, and residuals of dental trauma have been met. 38 U.S.C. §§ 501, 5103A(h), 5108; 38 C.F.R. § 3.2501; 83 FR 172, Jan. 18, 2019.

2. The criteria for service connection for prostate cancer presumed to have been caused by exposure to herbicides have been met. 38 U.S.C. §§ 1113, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309(e), 3.313.

3. The criteria for service connection for coronary artery disease presumed to have been caused by exposure to herbicides have been met. 38 U.S.C. §§ 1113, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309(e), 3.313.

4. The criteria for direct service connection for residuals of burns to the arms have been met. 38 U.S.C. §§ 1110, 1154(b), 5107; 38 C.F.R. § 3.303.

5. The criteria for direct service connection for residuals of burns to the face have been met. 38 U.S.C. §§ 1110, 1154(b), 5107; 38 C.F.R. § 3.303.

6. The criteria for service connection for headaches based upon continuity of symptomatology since service have been met. 38 U.S.C. §§ 1110, 1154(b), 5107; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from November 1963 to June 1969. He was awarded the Purple Heart Medal, six Air Medals including a Gold Star awarded in lieu of the fifth Air Medal, and the Navy Commendation Medal with Combat “V,” among other decorations.

This matter comes before the Board of Veterans’ Appeals (Board) from a May 2016 RO decision. On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). In January 2018, the Veteran elected to participate in the VA’s Rapid Appeals Modernization Program. Within this program, he selected the higher-level review option. Such review took place in March 2018. 

The Veteran presented sworn hearing testimony during a videoconference hearing before the undersigned Veterans Law Judge in November 2019. This decision is being made under the One Touch program, based upon review of the entire claims file and the undersigned’s recollection of the hearing testimony. A transcript of the hearing will be associated with the claims file at a later time. 

Previously-denied claims

To reopen a previously and finally disallowed claim, new and relevant evidence must be submitted by the claimant or secured by VA with respect to that claim since the last final denial, regardless of the basis for that denial. New evidence is evidence not previously part of the actual record before agency adjudicators. Relevant evidence is information that tends to prove or disprove a matter at issue in a claim. Relevant evidence includes evidence that raises a theory of entitlement that was not previously addressed. 38 C.F.R. § 3.2501. To warrant reopening, the new evidence must neither be cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened and must raise a reasonable possibility of substantiating the claim. See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010) (holding that there is a “low threshold” for reopening). The credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

Pertinent evidence added to the record since the March 2018 higher level review decision includes the Veteran’s testimony at the November 2019 hearing on appeal, and photographs submitted by his representative at that time. The Veteran’s hearing testimony is pertinent and relevant to each of the questions at hand, and the photographs tend to show a current disability involving the skin on the Veteran’s arms. In addition, the Veteran clarified that the events in question occurred under combat conditions. Thus, based on this newly-added evidence, the Board finds that new and relevant evidence has been added to the record which relates to previously unestablished elements of the claims. Thus, the claims for service connection for prostate cancer, coronary artery disease, residuals of burns affecting both arms and the face, headaches, and residuals of dental trauma will be readjudicated.

Analysis

Generally, service connection may be granted for any disability resulting from injury suffered or disease contracted in line of duty, or for aggravation in service of a pre-existing injury or disease. 38 U.S.C. §§ 1110, 1131. Service connection may be established by demonstrating that the disability was first manifested during service and has continued since service to the present time or by showing that a disability which pre-existed service was aggravated during service. Service connection may be granted for any disease diagnosed after discharge from service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303.

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify a disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word chronic. 38 C.F.R. § 3.303(b). Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or when the diagnosis of chronicity may be legitimately questioned. Id. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. Id. 

The continuity and chronicity provisions of 38 C.F.R. § 3.303(b) only apply to the chronic diseases enumerated in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), overruling Savage v. Gober, 10 Vet. App. 488, 495-96 (1997) (applying 38 C.F.R. § 3.303(b) to a chronic disease not listed in 38 C.F.R. §3.309(a) as “a substitute way of showing in-service incurrence and medical nexus.”) An organic disease of the nervous system is deemed a chronic disease for purposes of 38 C.F.R. § 3.309(a).

Disability which is proximately due to or the result of a service-connected disease or injury also shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310.

Regulations pertaining to herbicide exposure provide that if a Veteran served on active duty in Vietnam during the Vietnam era, the Veteran is presumed to have been exposed to Agent Orange or similar herbicides. 38 C.F.R. § 3.307. These regulations also stipulate the diseases, including prostate cancer and coronary artery disease, if manifested to a degree of 10 percent or more following service in the Republic of Vietnam any time during the period from January 9, 1962, to May 7, 1975. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a), 3.309(e).

The Veteran served in combat in the Republic of Vietnam. Therefore, the provisions of 38 U.S.C. § 1154(b) are applicable in this case, which state, in pertinent part, that in any case where a veteran is engaged in combat during active service, lay or other evidence of service incurrence of combat related disease or injury will be considered sufficient proof of service connection if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence during service, and, to that end, VA shall resolve every reasonable doubt in favor of the veteran. The Federal Circuit has held that the presumption found in § 1154(b) applies not only to the potential cause of a disability, but also to whether a disability itself was incurred while in service. See Reeves v. Shinseki, 682 F.3d 988, 999 (Fed. Cir. 2012).

Prostate cancer and coronary artery disease.

Herbicide exposure in Vietnam will be established when a service member set foot in Vietnam during the Vietnam Era. Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). The Veteran performed combat reconnaissance missions over North Vietnam for the purposes of conducting bomb damage assessments. He was awarded the Gold Star in lieu of a Sixth Air Medal for heroic aerial reconnaissance flights which came under surface-to-air missiles and anti-aircraft artillery fire. He was, in fact, shot down over North Vietnam on one occasion. His missions were based from the deck of the U.S.S. ENTERPRISE. 

However, the Veteran testified to landing twice in Da Nang for aircraft repairs after combat missions prior to attempting carrier landings. The Veteran’s testimony is credible, and establishes that he set foot in Vietnam. As such, he is presumed to have been exposed to herbicides. There is no dispute that he has been diagnosed with prostate cancer and coronary artery disease. VA can therefore presume under law that he was exposed to herbicides in Vietnam and that his prostate cancer and coronary artery disease were caused by such exposure. The claims are granted.

Residuals of burns to the arms and face.

The record establishes that, in February 1967, the Veteran’ plane was shot down and he had to bail out over enemy territory. He testified to incurring burns as a result of the rocket-based launch ejection seat as well as incoming enemy phosphorus flak anti-aircraft fire. That these events occurred are without question. 38 U.S.C. § 1154(b); Reeves v. Shinseki, 682 F.3d 988, 999 (Fed. Cir. 2012).

Within the allowable evidence window, the Veteran has supplemented the record with photographic evidence of the burn residuals to his arms into the record. He has provided competent testimony of similar burns on his forehead. He is clearly competent to state that these skin abnormalities were incurred during combat, and have been present ever since. See McCartt v. West, 12 Vet. App. 164, 167-68 (1999); Bruce v. West, 11 Vet. App. 405, 410-11 (1998). In addition, the medical records also include an assessment of phosphorus skin burns. Thus, the Board finds that the Veteran’s arms and face were burned during a rocket ejection from his plane, and incoming phosphorus flak anti-aircraft fire, under combat conditions over North Vietnam. The claims are granted.

Headaches.

The Veteran testified to the onset of recurrent headaches during the February 1967 seat ejection incident. He described initially being rendered unconscious due the forces of a rocket seat ejection while the plane was crashing at high speeds. He is service-connected for a cervical spine disability resulting from this trauma. Notably, recent medical records reflect headaches related to his service-connected cervical spine impairment. A headache disorder is deemed a chronic disease, and the Veteran’s testimony of chronicity since service is sufficient in and of itself to establish service connection. 38 C.F.R. § 3.303(b); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In addition, there is competent medical evidence relating his headaches to service-connected disability. 38 C.F.R. §3.310.

The Board notes that there is some history of headaches pre-existing service. However, the service treatment records prior to February 1967 reflect a denial of frequent headaches. His testimony that his current headaches have been recurrent since the ejection injury in service is credible and consistent with the injury, as above. Thus, the Board finds that the Veteran has had recurrent headaches ever since ejecting from his plan under combat conditions over North Vietnam. The claim is granted.

REASONS FOR REMAND

Residuals of dental injury.

The Veteran asserts that he injured several teeth during the incident where he ejected from his plane over enemy territory in North Korea. He testified that the ejection and the landing were both highly traumatic, and that he injured several teeth during the landing.

The Veteran’s service treatment records reflect that in August 1966, prior to the incident, his missing teeth included numbers 3, 16, 17, and 19. In August 1968, his records show he was also missing tooth number 8. As of his discharge in May 1969, he was additionally missing tooth number 12. His service dental records indicate that prostheses in place of teeth 8 and 12 were made for him. They also reflect that he underwent a root canal in tooth 12, followed by an extraction of the tooth two days later. The records are unclear as to what happened to tooth number 8, and also unclear as to why the root canal procedure was deemed necessary. 

The report of an August 2013 VA dental examination reflects that the Veteran is currently missing teeth numbers 8, 12, and 19. Teeth numbers 20, 30, and 31 have crowns. The missing teeth are replaceable by prosthesis. During the examination, the Veteran reported that the capped teeth were originally damaged when he ejected from his airplane, and that he believes he may have lost a tooth in the upper left of his mouth afterwards, as a result of the incident. He also reported that one of his front teeth had already been missing prior to the incident. 

Dental disabilities are treated differently than medical disabilities in the VA benefits system. Generally, treatable carious teeth, replaceable missing teeth, dental or alveolar abscesses and periodontal disease will be considered service-connected solely for the purpose of determining entitlement to dental examinations or outpatient dental treatment under the provisions of 38 C.F.R. Chapter 17. It is the responsibility of the Veterans Benefits Administration (represented in this case by the RO) to determine whether the claimed dental disability is a result of combat wounds, or service trauma, among other responsibilities relating to dental disorders. 38 C.F.R. § 3.381. 

Given the state of the evidence, the Board determines that the 2013 VA examination was inadequate to answer the necessary questions. Thus, another VA examination along with a thorough review of the Veteran’s service treatment records should be accomplished. The report of the August 2013 dental examination does not adequately interpret the Veteran’s service dental records, and does not contain a nexus opinion as to whether the missing teeth 8 and 12 were more, less, or equally likely to have been the result of combat wounds or service trauma; i.e., whether the loss of these teeth was triggered by the February 1967 ejection and landing. Furthermore, the examiner did not comment as to whether it is more, less, or equally likely that the crowns noted on teeth 20, 30, and 31 are related to trauma during the ejection and landing in February 1967. Thus, a remand to correct this duty to assist error is necessary. 

The Veteran’s claim of entitlement to service connection for residuals of dental trauma raises both the issue of service connection for compensation purposes and service connection for treatment purposes. See Mays v. Brown, 5 Vet. App. 302, 306 (1993). A claim of entitlement to service-connection for a dental disability for treatment purposes only is separate and distinct from a claim of entitlement to service-connection for a dental disability for compensation purposes. 38 C.F.R. § 3.381.

The Veteran has been clear throughout his prosecution of this claim that he is seeking both compensation, if appropriate, and dental treatment. It is unclear whether the treatment claim has been adjudicated. However, based upon the Veteran’s continued requests for this benefit, it does not appear to have been addressed by the appropriate agency within the Veterans Health Administration. In any case, the Board does not currently have jurisdiction over the claim for treatment. 38 C.F.R. § 19.9(b). Specifically, unless a treatment decision has already been made, the Veteran and his representative are advised to work with the RO to have the claim for dental treatment referred to the appropriate Veteran's Health Administration facility for review.

This matter is REMANDED for the following action:

Schedule the Veteran for an examination by a dentist. All indicated tests and studies should be accomplished in conjunction with the examination. The examiner should be provided with copies of the Veteran’s service dental records and copies of the annual examination reports showing his missing teeth at each year during his active service.

In light of the Veteran’s credible assertions that he damaged his teeth during the 1967 ejection and landing, under combat circumstances, the dentist should review the service treatment records together with a current clinical examination of the Veteran’s teeth for clues as to whether teeth # 8 and #12 were more, less, or equally likely to have been extracted due to trauma/injury during the 1967 incident. Similarly, the dentist should determine whether the crowns currently on teeth 20, 30, and 31 were more, less, or equally likely to have been placed as a result of trauma sustained during the 1967 incident. A discussion of the abbreviations used in the Veteran’s dental records will be helpful to adjudicators in understanding the conclusions reached by the dentist. 

If it is not possible to reach a conclusion without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

 

 

T. MAINELLI

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Heather J. Harter, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.